UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LAMAR BURTON,

                Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.
_____/

Case No. 1:20-cv-859

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Corizon Medical, J. Davids, Sabrina Davis, Dennis Cassel, M. Jex, Amie Gaskill (as a substituted party for Unknown Party identified as Employee of Corizon Medical RN-13), Unknown Oversmith, and S. Smoyer. The Court will also dismiss for failure to state a claim all of Plaintiff's claims against Defendant Unknown Huyge,

except for Plaintiff's Eighth Amendment deliberate indifference claim and his First Amendment retaliation claim.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff presently has another action pending in this Court, *Burton v. Mich. Dep't of Corr. et al.*, No. 1:20-cv-854 (W.D. Mich) (*Burton I*). Plaintiff's *Burton I* complaint recounts events that occurred at the Michigan Reformatory (RMI) from October of 2019 through February 12, 2020, when Plaintiff was transferred to ICF.  The present complaint picks up Plaintiff's story upon his arrival at ICF on February 12.   Plaintiff sues the MDOC, Corizon Medical, Physician's Assistant Unknown Huyge, Warden J. Davids, Assistant Deputy Warden Sabrina Davis, Inspector Dennis Cassel, Prisoner Counselor M. Jex, Unknown Party designated as Corizon Medical RN-12, Residential Unit Manager Unknown Oversmith, and Nurse S. Smoyer.

Plaintiff alleges that he suffers from a seizure disorder.  Plaintiff has taken seizure medications, such as Dilantin, to control his seizures since his incarceration.  During Plaintiff's last month at RMI, he was not medication compliant.  Perhaps for that reason, when Plaintiff arrived at ICF, his blood test revealed that his Dilantin levels were subtherapeutic.

On February 24, 2020, Plaintiff was seen by Defendant Huyge.  Huyge informed Plaintiff that because Plaintiff's Dilantin levels were low, he intended to discontinue Plaintiff's seizure medication.  Plaintiff protested, explaining to Huyge the mental health struggles he endured at RMI that led to Plaintiff not taking his medications.  Plaintiff also informed Huyge that Plaintiff

would be willing to take his medications going forward.  Nonetheless, Huyge began decreasing Plaintiff's Dilantin dose.

Plaintiff began protesting Huyge's action by way of healthcare requests, kites, and requests to file grievances.  On February 26, 2020, Plaintiff sent a healthcare request.  He was informed by kite response that he would be seen the week of March 9; but he was never called out.  On March 1, Plaintiff sent a kite to Defendants Jex, Oversmith, and Davids.  He never received a response.  On March 9, Plaintiff—who was on modified access to the administrative grievance process—sent a kite asking permission to file an administrative grievance regarding the seizure-medication issue.

Huyge continued to decrease Plaintiff's Dilantin dose until, by March 17, 2020, the medication had been discontinued.  That day, Plaintiff sent another healthcare request; but he received no reply.  Plaintiff reports that he started buying Dilantin and/or Depakote from other prisoners to reduce the risk of seizure.  On April 1, 2020, Plaintiff sent another healthcare request.  He received no reply.  On April 2, Plaintiff sent a kite to Defendants Davids and Davis.  He received no reply.  On April 15, and then again on April 30, Plaintiff sent new healthcare requests.  He received no reply.  On May 12, 2020, Plaintiff submitted a Step I grievance regarding the seizure-medication issue.

On July 2, Plaintiff had a seizure in his cell, but he did not report it.  On July 4, Plaintiff suffered two seizures in his cell.  Officers called healthcare and Plaintiff sent a healthcare request.  On July 6, Plaintiff requested permission to file another grievance regarding the seizure-medication issue.  On July 7 and 15, Plaintiff sent additional healthcare requests, but he received no replies.

On July 30, Plaintiff suffered another seizure in his cell.  Healthcare was called.  On August 2, Plaintiff had another seizure.  That day, Plaintiff sent another healthcare request and he sent a kite to the warden.  He received no replies.

On August 4, 2020, Plaintiff was called out by healthcare for his annual visit.  He told the nurse about the seizures.  She told him that he is on the list to be seen.  On August 13, Plaintiff was seen by Defendant Huyge.  Plaintiff told Huyge that Plaintiff was buying medications from other prisoners.  Huyge told Plaintiff that ICF healthcare would never put Plaintiff back on seizure medications because Plaintiff wrote grievances again Huyge.

Plaintiff claims that all of the Defendants are acting "in coordination" to deny Plaintiff his constitutional rights.  (Compl., ECF No. 1, PageID.3, 7.)  Plaintiff claims that Defendants have been deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.  Plaintiff also claims that Defendants have violated his First, Fourth, and Fourteenth Amendment rights.  Plaintiff does not explain the nature of the Fourth or Fourteenth Amendment violations, but he does state he is being "denied equal treatment/protection."  (*Id.*, PageID.3.)

Plaintiff seeks declaratory relief, compensatory damages of $900,000.00, punitive damages of $700,000.00, and an award of costs.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.   **Sovereign immunity**

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC.

## IV.    Defendant Corizon Medical

A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of

that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

Plaintiff has not sued a municipality or county; he has sued Corizon Medical. A private entity that contracts with the state to perform a traditional state function like providing healthcare to inmates—like Corizon—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 817-18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).

Consequently, Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation. *See Starcher*, 7 F. App'x at 465 (citing *Monell,* 436 U.S. at 690). Liability in a § 1983 action cannot be based on a theory of *respondeat superior. Id.* "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the [entity] may be held liable under § 1983." *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (internal quotation marks omitted). A custom is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). Moreover, the policy or custom "must be the moving force of the constitutional violation." *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994) (internal quotation marks omitted). In this case, Plaintiff fails to

allege any specific facts regarding a policy or custom of Defendant Corizon. Therefore, Defendant Corizon is properly dismissed.

## V.    Defendant Cassel

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Plaintiff lists Defendant Cassel when he lists the defendants, but there is no other reference to Cassel in the complaint or exhibits. Therefore, as against Defendant Cassel, Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff's complaint against Defendant Cassel must be dismissed for failure to state a claim.

## VI.    Defendant Unknown Party identified as Corizon Medical RN-13

Plaintiff sues an unknown party who he identifies as Corizon Medical RN-13.  That party, however, is specifically identified in the documents Plaintiff attaches to his complaint.  RN-13 is the party who responded to Plaintiff's grievance at Step I.  (Grievance, ECF No. 1-1, PageID.12-13.)  RN-13 is Amie Gaskill.  (*Id.*)  The Clerk shall substitute Amie Gaskill as a defendant in place of Unknown Party identified as Employee of Corizon Medical RN-13.

## VII.    Fourth Amendment claim

Plaintiff claims that Defendants violated his Fourth Amendment rights "over and over."  (Compl., ECF No. 1, PageID.8.)  The Fourth Amendment provides:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const, amend. IV.  Plaintiff alleges no facts from which one might infer that any Defendant, much less all of them, violated Plaintiff's Fourth Amendment rights.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## VIII.    Fourteenth Amendment claim

Plaintiff claims that Defendants violated his Fourteenth Amendment rights. (Compl., ECF No. 1, PageID.8.)   He also specifically claims that is being "denied equal treatment/protection."  (*Id.*, PageID.3.)  Therefore, the Court will address Plaintiff's Fourteenth Amendment violation claim as an equal protection claim.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently

than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff mentions "equal protection" in his complaint, but he does not allege facts that support such a claim.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff does not even allege disparate treatment here.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff has failed to state a claim for violation of his equal protection rights.

## IX.   Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment

10

is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008).

The Sixth Circuit Court of Appeals considered an Eighth Amendment claim based on a failure to provide Dilantin to a prisoner with a seizure disorder in *Parsons v. Caruso*, 491 F. App's 597 (2012). In that case, the defendants did not contest that an unmedicated seizure disorder was a serious medical need. *Id.* at 601; *see also Newberry v. Melton*, 726 F. App'x 290, 295 n.2 (6th Cir. 2018) (citing cases where courts have treated a failure to respond to seizures as an objectively serious medical need without any analysis); *Esch v. Kent Cnty*, 699 F. App'x 509, 516 n. 5 (6th Cir. 2017) (seizure disorder is "an objectively serious condition for Eighth Amendment purposes."). With regard to the subjective component, the court stated:

> The proposition that deliberate indifference to a prisoner's medical needs can amount to a constitutional violation has been well-settled since *Estelle* in 1976. Moreover, numerous decisions have involved the withholding or delayed administration of medication. *See, e.g., Canady v. Wilkinson*, 90 F. App'x 863 (6th Cir. 2004) (holding that delay in prescription was not Eighth Amendment violation because delay was inadvertent and quickly rectified); *Dozier v. Pauley*, 24 F. App'x 398 (6th Cir. 2000) (holding that prescription delay was not violation because plaintiff could not establish detrimental effect of delay in treatment). A number of cases involve the failure to provide Dilantin to a prisoner with a seizure disorder. *See, e.g., Hudson v. McHugh*, 148 F.3d 859 (7th Cir. 1998) (denying

summary judgment for officers and nurse who allegedly failed to provide Dilantin to a prisoner known to take the medication for his seizure disorder). The idea that failing to provide medication like Dilantin can amount to a constitutional violation was therefore "clearly established" in 2004 when these events took place. *See Leary v. Livingston Cnty.*, 528 F.3d 438, 441 (6th Cir. 2008).

*Parsons*, 491 F. App'x at 601.

### A. Defendant Huyge

Defendant Huyge's discontinuance of Plaintiff's seizure medication was not inadvertent. It was plainly purposeful. Although the reasoning initially offered by Huyge might permit a characterization that the discontinuance was merely a disagreement between Huyge and Plaintiff regarding the appropriate treatment for Plaintiff's disorder,[1] Huyge's subsequent statement that Plaintiff would never get seizure medication because he filed grievances against Huyge evidences deliberate indifference to Plaintiff's serious medical need. Accordingly, the Court concludes that Plaintiff's allegations suffice to state an Eighth Amendment deliberate indifference claim against Defendant Huyge.

### B. Defendants Gaskill (RN-13) and Smoyer

Plaintiff does not make specific allegations against Defendants Gaskill or Smoyer. Their roles in Plaintiff's treatment are apparent from the documents attached to Plaintiff's complaint. Defendant Gaskill responded to Plaintiff's grievance at Step I; Defendant Smoyer responded to Plaintiff's grievance at Step III.

Defendant Gaskill responded to Plaintiff's grievance at Step I as follows:

The electronic medical record has been reviewed. Every kite that was received by health care during this time frame was reviewed. All of the kites received were

---

[1] Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

regarding different issues.  The grievant was seen by the medical provider (MP) on 2/24/20 and he documented that the grievant is not compliant with his seizure meds; he doesn't take them all the time because he gets paranoid and doesn't trust people. It was noted that his last seizure was in 2018 and most times his dilantin level was subtherapeutic.  For this reason he was weaned off Dilantin.  There has been no report of any seizure activity.

Per the above, the grievant states he kited asking to get put back on seizure meds however there is no documentation of kites regarding this request received by health care.  Documentation contained in the 2/24/20 MP visit demonstrates the rationale behind weaning the grievant off of the medication.  The medical provider is the most appropriate QHP to determine a plan of care for the patient.

(Grievance, ECF No. 1-1, PageID.13.)  At Step III, Defendant Smoyer took a different approach. Defendant Smoyer concluded that because the medical record did not include any attempt by Plaintiff to resolve the dispute regarding Dilantin by way of healthcare request, that the grievance was properly rejected.  (*Id.*, PageID.15.)

The Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior.  Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance.  *Id.*  Also, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure."[2]  *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No.

---

[2] The Sixth Circuit has only found that there is a constitutional right not to be retaliated against for having filed a nonfrivolous grievance.  *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Shehee*, 199 F.3d at 301.  Plaintiff alleges such retaliation here.  His retaliation claim is considered below.

97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411,

1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (no constitutional right to a grievance procedure).

In the context of a grievance alleging a denial of medical care, it is not impossible

for a grievance denial to amount to a further denial of medical care.  If the healthcare provider's

initial denial of care evidences deliberate indifference on the face of the denial, to deny a grievance

might itself constitute active constitutional behavior.  In Plaintiff's case, however, Defendant

Huyge's discontinuance of Dilantin does not, on its face, evidence deliberate indifference.

Plaintiff does not dispute that he was not complying with his medication regimen.  It is not

surprising, therefore, that his Dilantin levels were subtherapeutic.  Nor does discontinuing a

medication that appears to serve no purpose seem to be an inappropriate response.[3]  Indeed, it is

only Defendant Huyge's subsequent statement—that he took the Dilantin away and that Plaintiff

would not get it back because Plaintiff filed grievances—that reveals Huyge's deliberate

indifference.  There are no facts alleged in Plaintiff's complaint that suggest that Nurse Gaskill

was aware of, or shared, that motivation.  Absent Plaintiff's allegation of facts from which the

Court might infer deliberate indifference by Nurse Gaskill, her denial of the grievance does not

rise to the level of active unconstitutional conduct.

Nurse Smoyer never addressed the merits of the decision to discontinue Plaintiff's

Dilantin.  Instead, Nurse Smoyer denied the grievance on procedural grounds.  Nurse Smoyer

concluded that because the electronic medical record did not include the healthcare requests that

Plaintiff claims showed his attempts to resolve the matter before filing his grievance, that the

grievance was properly rejected.  Plaintiff alleges no facts regarding Defendant Smoyer and the

---

[3] Although Plaintiff now claims he suffered seizures on October 9, 2019, and January 29, 2020, while he was housed at RMI, he was silent regarding those seizures in his *Burton I* complaint and he does not state that he mentioned those seizures to Defendant Huyge or anyone else.  The first time Plaintiff mentions them is in his grievance appeal at Step II on May 21, 2020.  (Grievance, ECF No. 1-1, PageID.14.)

14

Court perceives nothing in Smoyer's procedural rejection of the grievance that supports an inference of active unconstitutional conduct.

For these reasons, the Court concludes that Plaintiff has failed to state a claim against Defendants Gaskill and Smoyer.

### C.      Defendants Davids, Davis, Jex, and Oversmith

Plaintiff's Eighth Amendment claims against Defendants Davids, Davis, Jex, and Oversmith are not based on those Defendants' failure to provide medical care as much as they are based on those Defendants' failure to protect Plaintiff from Defendant Huyge's failure to provide medical care.  To prevail on such a claim, Plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer,* 511 U.S. at 834.  (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37.

To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

15

Plaintiff claims that Defendants Davids, Davis, Jex, and Oversmith knew of the risk to Plaintiff's safety that followed from the discontinuance of his Dilantin.  That claim, however, depends entirely on four documents attached to Plaintiff's complaint.  (Exhibits, ECf No. 1-1, PageID.32-33.)  To understand those documents requires some background regarding Plaintiff's modified access to the administrative grievance process.

Plaintiff was on modified grievance access at RMI before he transferred to ICF.  That modified access was scheduled to continue until April 10, 2020.  (Memo., ECF No. 1-1, PageID.36.)  But, once Plaintiff arrived at ICF, he ignored his modified access status and began to file grievances without seeking permission from the Grievance Coordinator.  (*Id.*)  He filed five grievances in his first two weeks.  (*Id.*)  As a consequence, Defendant Davids extended Plaintiff's modified access status for 150 days, until September 7, 2020.  (*Id.*)

Because Plaintiff was on modified access, Plaintiff could only obtain grievance forms from the Step I Grievance Coordinator.  Plaintiff attaches several requests for grievance forms to his complaint.  (Grievance Requests, ECF No. 1-1, PageID.17-20.)  Those requests were handwritten requests.   While Plaintiff was at RMI, however, he used a form to request the grievance forms from the Grievance Coordinator.  *Burton I* (Exhibits, ECF No. 1-28, PageID.44; ECF No. 1-29, PageID.45; ECF No. 1-30, PageID.46; ECF No. 1-31, PageID.47; ECF No. 1-44, PageID.66.)  That form was approximately one-third the size of an 8 ½ by 11inch sheet of paper.  It included a preprinted "address" to the Grievance Coordinator along with a preprinted statement that the request complied with the time limits of the relevant MDOC Policy Directive.  *See, e.g., Burton I* (Exhibits, ECF No. 1-29, PageID.45.)  It also included a signature line for the "Grievant's Signature."  (*Id.*)  Plaintiff used those forms to communicate with Defendants Davids, Davis, Cassel, Jex, and Oversmith.  (Grievance Request Forms, ECF No. 1-1, PageId.32-33.)

16

Plaintiff's first grievance request form is dated March 1, 2020, and addressed to Defendants Davids, Jex, and Oversmith—in addition to the preprinted address to the Grievance Coordinator. (ECF No. 1-1, PageID.33.) Petitioner signed as the grievant. (*Id.*) By way of this communication Plaintiff communicated that Huyge intended to discontinue Plaintiff seizure meds. (*Id.*) Plaintiff concludes the communication with the statement: "Due to this kite you all now have actual knowledge of my request." (*Id.*)

Plaintiff second grievance request form is dated April 2, 2020, and addressed to Defendants Davids and Davis—in addition to the preprinted address to the Grievance Coordinator. (*Id.*) Petitioner again signed as the grievant. (*Id.*) By way of this communication, Plaintiff informed the recipients that Huyge had discontinued the medications and refused to put Plaintiff back on the meds. (*Id.*) Plaintiff concludes the communication with the statement: "Due to this kite you all now have actual knowledge of this matter." (*Id.*)

Plaintiff's third grievance request form is dated July 15, 2020, and addressed to Defendants Davids, Davis, and Oversmith (and assistant deputy warden Taylor, who is not a defendant)—in addition to the preprinted address to the grievance Coordinator. (*Id.*) Plaintiff again signed as the Grievant. (*Id.*) By way of this communication, Plaintiff complained of healthcare's failure to treat his carpal tunnel/neuropathy issues and the refusal to put Plaintiff back on his seizure meds. (*Id.*) Plaintiff informs the recipients that he had two seizures on July 4. (*Id.*) Plaintiff concludes the communication with the statement: "Due to this kite you now have actual knowledge of [the] above." (*Id.*)

Plaintiff's fourth and final grievance request form is dated August 2, 2020, and addressed to Defendant Davids—in addition to the preprinted address to the Grievance Coordinator. (ECF No. 1-1, PageID.32.) Petitioner again signed as the Grievant. (*Id.*) Plaintiff

informed Warden Davids that healthcare was still no placing Plaintiff back on his seizure medication.  (*Id.*)  Plaintiff closes with the statement:  "Due to this kite you all now have actual knowledge."  (*Id.*)

Plaintiff's assertion that Davids, Davis, Jex, and Oversmith had knowledge of the risk of harm is based completely on Plaintiff's grievance request forms.  Given the form of those communications, however, and the manner in which they were addressed, it appears unlikely that the communcations would have made their way into the hands of the warden or any other person listed on the document other than the Grievance Coordinator.  Accordingly, Plaintiff's allegation that Defendants Davids, Davis, Jex, or Oversmith had knowledge of a risk of harm to Plaintiff is entirely conclusory; the communications, standing alone, do not support the inference that Defendants Davids, Davis, Jex, or Oversmith knew of a risk of harm to Plaintiff; and Plaintiff offers no other facts to support the inference.  Accordingly, Plaintiff's statement of an Eighth Amendment claim against these Defendants is not sufficient.

## X.    First Amendment retaliation

Plaintiff suggests that Defendants retaliated against him for his filing of grievances. To set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   Although Plaintiff may have been engaged in protected conduct when he filed administrative grievances or any other document complaining about the Defendants, he has not shown that any of the persons who took adverse action against him were motivated by those complaints, except Defendant Huyge.  Plaintiff alleges that Huyge specifically attributed the denial

18

of Dilantin to Plaintiff to Plaintiff's filing of grievances.  With respect to Defendant Huyge, Plaintiff has stated a claim for First Amendment retaliation.

Beyond Defendant Huyge, Plaintiff has failed to allege any facts to support the inference that the Defendants were motivated to take adverse action against Plaintiff because of his filing of grievances.[4]  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");  *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).  Except with respect to Defendant Huyge, Plaintiff merely alleges the ultimate fact of retaliation in this action.  He has not presented any facts to support his conclusion

---

[4] It is possible to characterize Defendant Davids' placement of Plaintiff on modified access as "motivated by" Plaintiff's filing of grievances.  But, the Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim.  *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001).  Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified-access status does not impair the ability to file civil rights actions in federal court.  A plaintiff's placement on modified access to the grievance procedure merely enables prison officials to screen grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative.  *See Kennedy*, 20 F. App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)).  Accordingly, there can be no First Amendment retaliation claim for placing a prisoner on modified access.

that the other Defendants retaliated against him because he filed or attempted to file a grievance. Accordingly, his speculative retaliation allegations fail to state a claim.

## XI.   Conspiracy

Plaintiff states that Defendants "worked in coordination." (Compl., ECF No. 1, PageID.3, 7.) To the extent Plaintiff intends that allegation as a foundation for a conspiracy claim, his allegations fall short. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of coordinated action are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete occurrences over a period of time involving numerous individual MDOC officials. He appears to rely entirely on a highly attenuated inference from the mere fact that he has been subjected to objectionable treatment by a variety of prison officials or that prison officials have not fixed his problems. As the Supreme Court has held, such allegations, while

hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 557.   Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567).   In light of the far more likely possibility that the various incidents occurring over the six-month period at issue in Plaintiff's complaint were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Corizon, Davids, Davis, Cassel, Jex, Gaskill (Unknown Party RN-13), Oversmith, and Smoyer, will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).   The Court will also dismiss, for failure to state a claim, all claims against remaining Defendant Huyge, except for Plaintiff's Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs and Plaintiff's First Amendment retaliation claim.   Plaintiff's Eighth Amendment deliberate indifference and First Amendment retaliation claims against Defendant Huyge are the only claims that remain in the case.

An order consistent with this opinion will be entered.


Dated:   __September 24, 2020__                         __/s/ Paul L. Maloney__
                                                        Paul L. Maloney
                                                        United States District Judge